IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 14, 2004

## DENICE SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 27,621-III     Rex Henry Ogle, Judge**

_____

**No. E2004-00224-CCA-R3-PC - Filed February 16, 2005**

_____

The petitioner appeals the denial of her petition for post-conviction relief from her first degree murder conviction, arguing that the post-conviction court erred in finding that she received the effective assistance of trial counsel. She also contends she was denied the effective assistance of post-conviction counsel. Following our review, we affirm the denial of the post-conviction petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Jason S. Randolph, Dandridge, Tennessee, and Lorraine Raymond, Chattanooga, Tennessee, for the appellant, Denice Smith.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Following a joint trial, the petitioner, Denice Smith, and her twin sister, Deborah Graham, were each convicted of the first degree murder of Smith's ex-husband, Aaron Smith, and sentenced to life with the possibility of parole. Their convictions were affirmed on direct appeal, and our supreme court denied application for permission to appeal. See State v. Deborah Graham and Denice Smith, No. E1999-02248-CCA-R3-CD, 2001 WL 301160, at *1 (Tenn. Crim. App. Mar. 29, 2001), perm. to appeal denied (Tenn. Sept. 17, 2001).

The petitioner subsequently filed a *pro se* and, following the appointment of counsel, amended petition for post-conviction relief in which she raised, among other things, a claim of

ineffective assistance of counsel. Specifically, she alleged that counsel was ineffective for failing to properly prepare for the petitioner's joint trial with her sister. The petitioner asserted that counsel "should have held the motion hearing" on her motion for severance of defendants earlier than the day prior to the start of trial or, following the trial court's adverse ruling on the motion, "postponed the trial in order to adequately prepare for the trial."

A joint evidentiary hearing was held on the post-conviction claims of the petitioner and the post-conviction claims of her sister, Deborah Graham. At the evidentiary hearing, the petitioner's trial counsel testified she had been practicing law since 1987. Over the years she had handled hundreds of criminal cases, including somewhere between ten and twenty murder and conspiracy to commit murder cases. Although she thought she did "a pretty good job" in most of those cases, she did not believe she was effective counsel in the petitioner's case. Trial counsel said she filed a motion for severance of defendants approximately seventeen months prior to the start of trial and contacted the trial judge's secretary at least twice in the month preceding trial in an attempt to get the hearing on the motion held earlier, but the hearing was not held until the day before the trial started. Because she had so little warning, she was not as prepared for the joint trial as she could have been. She explained:

> As I said earlier, I feel like I had to take a generalized approach with the proof and be ready for different contingencies, which I did do the best that I could. But generally when I'm trying a case, certainly something as important as this, I know exactly who my witnesses are going to be, I know exact -- I have my questions written out, typed out, what I'm going to ask this person. I have a theory that I'm trying to prove or not prove. And I'm just generally a lot more prepared because I know who will be the witnesses, who will not; what statements are coming in, what statements are not; what evidence is coming in, what evidence is not. I mean, generally I know that well in advance. I should.

Trial counsel testified she believed the proof against her client was not as strong as the proof against Graham. For that reason, she thought it was in the petitioner's best interests to be tried either alone or with both Graham and the third codefendant involved in the case. She said that, had the petitioner been tried separately from her sister, she probably would have wanted her to testify in her own defense.

Trial counsel acknowledged she developed various trial strategies and defense theories based on the different possible scenarios of the petitioner's being tried alone, with her sister, or with her sister and the third codefendant. She further acknowledged that the petitioner's and Graham's cases were set together each time the case was scheduled for trial and that she anticipated that the cases would be tried together. She said she met regularly with the petitioner to discuss the possible defenses, had access to the codefendants' statements, and talked to almost all the witnesses involved in the case. In sum, she conceded that she was generally prepared for trial and that she did the best job she could under the circumstances.

Renfro Blackburn Baird, III, the attorney who represented the petitioner's sister, Deborah Graham, testified he had been practicing law since 1988 and had handled hundreds of criminal cases during his career, including an estimated thirteen or fourteen murder cases. According to Baird, the petitioner's case was originally reset when he and trial counsel "realized [they] weren't going to be able to try it in that first setting" because of the number of witnesses and convoluted set of facts involved. Thereafter, he and trial counsel "were really well prepared" for a February trial date, but the case was then continued on the motion of the State. Baird testified he, too, believed that his client's best interests would be served by a separate trial and therefore either joined in trial counsel's motion to sever or filed a motion of his own on behalf of Graham. He agreed he would have been more effective in his representation of Graham had he known earlier that the motion was going to be denied. He stated, however, that he and trial counsel had anticipated all the possible trial scenarios: "I think that [trial counsel] and I tried every way to try to give ourselves -- we tried to look ahead, give ourselves every type of scenario that we could be dealing with as far as witnesses and the way we handled things in that case."

Baird acknowledged he and trial counsel had almost a year and a half in which to prepare the case, worked well together, and were as well if not better prepared at the actual summer trial date as they were for the earlier February setting. He testified he and trial counsel were both aware that their chances of having all three codefendants tried together were slim because of the potential <u>Bruton</u> problems associated with the third codefendant's statements. He was also aware that trial counsel had attempted at least twice to have the hearing on their motion to sever held earlier, only to be told by the trial judge's secretary that the matter would be heard in the day or two preceding trial. Baird agreed that "[t]here was really no reason" for him or trial counsel to move for a continuance following the trial court's adverse ruling on the motion, testifying that he and trial counsel thoroughly discussed the case with their respective clients and continued their preparations for trial following the trial court's ruling on the motion: "I remember those two days we spent a lot of time together with [trial counsel] and myself and [the petitioner] and Deborah Graham getting ready for trial and trying to determine the strategies that we would use and whether or not, you know, they would testify and different things of that nature." Finally, Baird testified that it was the petitioner's damaging letters written from jail, which would have been admitted had she taken the stand, that was the large factor in her choice not to testify.

The post-conviction court issued oral findings of fact and conclusions of law at the conclusion of the hearing. The court's oral ruling was subsequently transcribed into a written order, which was entered on March 1, 2004. Among other things, the court found that both trial counsel had investigated the case, talked to all the witnesses, and "done everything they could do." With respect to the petitioner's counsel, the post-conviction court found, specifically, that trial counsel filed motions, worked diligently on her client's behalf, and had not been deficient in her representation. The court noted that the petitioner's case was tried with her sister's pursuant to the rules on joinder of cases and found that trial counsel's belief that the outcome was not fair to the petitioner had no bearing on the issue of whether counsel was deficient in her representation. Accordingly, the court concluded that the petitioner had not met her burden of demonstrating she was denied the effective assistance of counsel and denied the petition. Thereafter, the petitioner filed

a timely appeal to this court, arguing that the post-conviction court erred in finding she received the effective assistance of counsel. The petitioner additionally argues that she was denied the effective assistance of post-conviction counsel.

## ANALYSIS

### Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). However, review of the post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

### Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine

confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that the post-conviction court erroneously based the denial of the petition, in part, on his own personal trial experiences rather than on the evidence at the hearing. According to the petitioner's argument, trial counsel's admission at the hearing that she was ineffective constituted clear and convincing evidence that the petitioner was denied the effective assistance of trial counsel. We respectfully disagree.

The post-conviction judge's reference to his own personal experiences occurred as he observed that the decision on the motion for severance was outside counsel's control and did not provide a basis for a finding that she was deficient in her representation of the petitioner:

> An attorney, simply because they cannot get the case tried the way they want it tried or the fact that they cannot get the witnesses [sic] either excluded or severed as they want them, doesn't make the attorney ineffective. It just makes for a hard case. And I've been there and have sat in the same chairs they've sat, and had the same results they've had in very similar-type cases. But that doesn't make the attorney ineffective. The basis for ineffective assistance of counsel is an attorney not doing the job they have either been hired or appointed to do, and do it with due diligence as required by the [S]ixth [A]mendment.

The post-conviction court found that trial counsel conducted appropriate investigation, interviewed witnesses, filed pertinent motions, and overall worked diligently in her representation of the petitioner. The court concluded, therefore, that the petitioner had not shown that trial counsel was deficient in her representation or that she was denied the effective assistance of counsel.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel testified she interviewed almost every witness, was aware of the codefendants' statements, and met regularly with the petitioner to discuss the possible defenses and strategies. Both she and Baird testified that they prepared the case, formulated different theories of defense, and discussed every trial scenario, including the one that occurred, in which the petitioner and her sister were tried jointly in a separate trial from the third codefendant in the case. Baird stated that he and trial counsel were "really well prepared" for the February trial setting. He agreed they were equally if not better prepared for the actual summer trial date, and there would have been no reason for them to request a continuance following the court's adverse ruling on their motion to sever. Both counsel testified that trial counsel filed her motion to sever many months prior to trial and that she attempted at least

twice to have it heard in the month preceding trial, to no avail. Finally, trial counsel testified she was generally prepared and did the best job she could under the circumstances.

Although trial counsel testified at the evidentiary hearing that she did not believe she had provided effective assistance at the trial, the post-conviction court was not bound by her apparent concession. In fact, the post-conviction court must apply an objective standard in determining whether a petitioner received effective assistance of counsel. See generally Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000); Tarver v. Hopper, 169 F.3d 710, 716 (11th Cir. 1999); Atkins v. Singletary, 965 F.2d 952, 960 (11th Cir. 1992). Asked how she had been ineffective, trial counsel was able to say only that she thought she should have had more advance warning that the case would be tried jointly so that she could have prepared a more complete list of questions to ask potential witnesses. However, as the trial court observed, the fact that the trial did not proceed in the manner trial counsel would have preferred has no relevance on whether she was deficient in her representation of the petitioner. Nothing in this record shows that trial counsel's performance fell below the standard of competence required of an attorney in a criminal case. Furthermore, there is also nothing in the record to show that counsel's alleged deficiency in performance prejudiced the outcome of the case. This court concluded on direct appeal that the trial court properly denied the petitioner's motion for a severance, having "correctly applied the law and reached a logical decision based upon the facts as they applied to the law." Deborah Graham and Denice Smith, 2001 WL 301160, at **12-13.

The petitioner additionally argues that she received ineffective assistance of post-conviction counsel based on counsel's failure to pursue any other claims besides ineffective assistance of trial counsel and on his failure to call additional witnesses to testify at the evidentiary hearing. However, as the State notes, the law is well-established that a petitioner has neither a statutory nor a constitutional right to the effective assistance of post-conviction counsel. See Stokes v. State, 146 S.W.3d 56, 60 (Tenn. 2004); House v. State, 911 S.W.2d 705, 712 (Tenn. 1995). The petitioner, therefore, is not entitled to post-conviction relief on the basis of this claim.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met her burden of showing she was denied the effective assistance of trial counsel. We further conclude she is not entitled to relief on the basis of her claim of ineffective assistance of post-conviction counsel. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE